**TOLL NAVAL ASSOCIATES,**
Appellant

v.

**CHUN–FANG HSU, Appellee.**

**Chun–Fang Hsu**

v.

**Toll Brothers, Inc.**

**Appeal of Toll Naval Associates.**

**Toll Naval Associates, Appellant**

v.

**Chun–Fang Hsu, Appellee.**

**Chun–Fang Hsu**

v.

**Toll Brothers, Inc.**

**Appeal of Toll Naval Associates.**

Superior Court of Pennsylvania.

Argued Dec. 10, 2013.
Filed Jan. 30, 2014.

522

Michael K. Twersky, Philadelphia, for appellant.

Eric A. Feldhake, Haddonfield, NJ, for appellee.

BEFORE: BENDER, P.J., LAZARUS, J. and FITZGERALD *, J.

OPINION BY BENDER, P.J.

Toll Naval Associates ("Toll" or "Appellant") appeals from the judgment entered against it on February 12, 2013, confirming an arbitration award arising out of a real estate dispute, initiated by Chun–Fang Hsu ("Hsu" or "Appellee"), an individual.[1] Additionally, Toll appeals from an order entered March 18, 2013, entered subsequent to its appeal from the entry of judgment. That order concerned the trial court's management of its dockets. After review, we vacate the March 2013 order and affirm the entry of judgment.

The trial court related the following factual and procedural history:

An agreement of sale was entered between Hsu and Toll Brothers on October 21, 2007, to purchase a condominium at 100 Captains Way in Philadelphia. After the sale had been completed, Hsu complained that his property was without a proper parking spot. As a result, in March 2009 Toll Brothers and Hsu entered a settlement agreement which deeded Hsu a parking spot at the aforementioned property. Within the settlement agreement, Toll Brothers received a general release of all potential claims Hsu may have against Toll Brothers.

In June 2009 Hsu filed an action claiming Toll Brothers conveyed a condominium that was roughly 300 square feet less than the sale agreement required. Hsu filed a claim with the American Arbitration Association pursuant to the Agreement of Sale. Toll Brothers contended that the matter should be dismissed because of Hsu's general release in the parking spot dispute. Counsel for Hsu and Toll Brothers each submitted letter briefs on the issue to the Arbitrator, Samuel A. Karsch. The Arbitrator, after reviewing arguments by counsel and the release itself, issued an order that found the general release had no application to the dispute at issue. Thereafter, Karsch conducted a hearing on the matter and issued a decision on December 5, 2011, in which he found in favor of Hsu and awarded $94,795.

On [January 4, 2012], Toll Brothers filed a motion to vacate the arbitration award under *Toll Naval Associates v. Chun–Fang Hsu* CCP 1201–0303. The matter was assigned to the Honorable Judge Leon Tucker, who denied the motion [on February 21, 2012]. Toll Brother's motion to vacate included the argument that Kars[c]h failed to give weight to the general release in their settlement

---

* Former Justice specially assigned to the Superior Court.

1. Toll appeals on its own behalf and on behalf of Toll Brothers, Inc. Any distinction between Toll Naval Associates and Toll Brothers, Inc. or the corporate structuring of the two, appears irrelevant to the issues before this Court.

agreement with Hsu; and this irregularity caused the rendition of an unjust, inequitable or unconsc[ionable] arbitration award.

On July 19, 2012 Hsu filed this Petition to confirm the Arbitrator's Award which was assigned to this court. Toll filed a response, the court heard oral argument and on November 28, 2012 this court granted the Petition and confirmed the award.

This court's Order confirmed the arbitration award and further directed that "... judgment be entered by the Prothonotary upon Praecipe filed by Petitioner." On February 13, 2013, Hsu's counsel filed a Praecipe for Judgment and Judgment was entered. Toll Brothers filed this timely appeal. At this point the record becomes confusing. Apparently in the case before Judge Tucker, Toll Brothers had filed an appeal to the Superior Court. The appeal was quashed because no judgment had been entered. On December 5, 2012, Toll Brothers filed a Motion to consolidate this case with Judge Tucker's case. Prior to that date neither party had requested a consolidation. In error, this court granted the consolidation on December 31, 2012.[2] In March, when the appeals were filed, this court discovered the error and by Order issued March 18, 2013, vacated the December 31st consolidation Order. This procedural confusion has no effect on merits of the case.

Trial Court Opinion (T.C.O.), 5/15/13, at 1–3 (unpaginated) (footnote omitted).

On appeal, Appellant raises five issues for our review:

1. Did the trial court commit a manifest abuse of discretion or error of law by denying a Petition to Vacate an arbitration award where the arbitrator ruled on the enforceability of a prior settlement agreement between the parties without affording appellant Toll Naval Associates ("Toll") a "hearing wherein each party shall have the opportunity to know the claims of [its] opponent, to hear evidence introduced against [it], to cross-examine witnesses, to introduce evidence in [its] own behalf and to make argument" as required pursuant to this Court's decision in *Andrew v. CUNA Brokerage Services, Inc.*, 976 A.2d 496 (Pa.Super.2009)?

2. Did the trial court commit a manifest abuse of discretion or error of law by denying a Petition to Vacate an arbitration award where the arbitrator ignored the plain and unambiguous language of a prior Settlement Agreement between the parties that contains a broad general release that should have prohibited the claims on which the arbitration award was based?

3. Did the trial court commit a manifest abuse of discretion or error of law by denying a Petition to Vacate an arbitration award where the arbitrator entered an award that is contrary to the well-established public policy favoring the settlement of civil disputes?

4. Did the trial court commit a manifest abuse of discretion or error of law by denying a Petition to Vacate an arbitration award that is unjust, inequitable or unconscionable result because it holds Toll liable after Toll paid good and valuable consideration for appellee Chun-Fang Hsu to release "any and all claims ... known or unknown ... arising out of any matter ... including without limitation: any Claims relating to or arising

---

**2.** Although the order was dated December 31, 2012, it was not entered until January 2, 2013.

out of the Hsus' home buying experience at Toll."

5. Did the trial court's March 18, 2013 Order entered after Toll had already filed its Notices of Appeal violate Pa. R.A.P. 1701?

Appellant's Brief at 5–6.[3]

■■■ Our standard of review of common law arbitration is limited:

> The award of an arbitrator in a nonjudicial arbitration which is not subject to statutory arbitration or to a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award. The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either. A trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law.

*U.S. Claims, Inc. v. Dougherty,* 914 A.2d 874, 876 (Pa.Super.2006) (internal citations omitted); 42 Pa.C.S. § 7341. "The appellant bears the burden to establish both the underlying irregularity and the resulting inequity by clear, precise, and indubitable evidence." *McKenna v. Sosso,* 745 A.2d 1, 4 (Pa.Super.1999).

*Andrew v. CUNA Brokerage Services, Inc.,* 976 A.2d 496, 500 (Pa.Super.2009).

Much of this standard of review is codified:

### § 7341. Common law arbitration

The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

42 Pa.C.S. § 7341.

■■■ Appellant first argues that the arbitration award must be vacated because it was denied a hearing on the issue of the effect of the general release provision of the earlier Settlement Agreement, which was entered into as a consequence of the

3. As a preliminary matter, we address Appellant's final issue, concerning the March 18, 2013 trial court order, entered after the first notices of appeal were filed in this case. This case began with Toll's motion to vacate the arbitration award. That motion was denied and Hsu filed a praecipe for judgment which, for reasons unclear to this Court, was filed at a separate docket number and assigned to a separate trial court judge. It is these two dockets that the trial court consolidated by order entered in January 2013. Subsequently, the trial court entered judgment on the arbitration award. Notices of appeal were filed at both trial court docket numbers, and were docketed on appeal at Docket Nos. 838 EDA 2013 and 839 EDA 2013. In March 2013, after the filing of those appeals, the trial court entered an order vacating the January 2013 consolidation order, concluding that it lacked jurisdiction to have entered it. Appellant filed notices of appeal from the March 2013 order at both trial court docket numbers, which were docketed in this Court at Docket Nos. 1297 EDA 2013 and 1298 EDA 2013. With respect to this order, Appellant argues that after the filing of the first round of notices of appeal, the trial court was without jurisdiction to vacate the consolidation order. On May 30, 2013, the parties filed a stipulation for consolidation of all four appellate docket numbers in this Court. In light of the stipulated consolidation and our ultimate disposition in this matter, we vacate the trial court's March 18, 2013 order.

parking space dispute.[4]  As mentioned in the trial court opinion, this issue arose as a preliminary matter, similar to a motion for summary judgment.  Appellant requested that the matter be disposed of by way of letter briefing.

Appellee counters that Appellant's contention is meritless.  He argues that Appellant relinquished its right to a hearing when it requested that the issue be decided by the arbitrator in a preliminary manner as a purely legal matter, able to be disposed of "on the papers."  Appellee's Brief at 11–14;  Letter, 1/26/11, at 2 (unpaginated);  R.R. 211a–212a.  Appellant's brief does not discuss whether it relinquished its right to a hearing by this request.

■ The Uniform Arbitration Act ("UAA") was first adopted in Pennsylvania in 1927.  In 1980, Pennsylvania repealed the 1927 Act by adopting and modifying in part the model Uniform Arbitration Act of 1955 to create the current UAA. Pennsylvania has not adopted the 1990 amendments to the model act.  The purpose of the UAA was to promote the resolution of disputes in a nonjudicial forum while still providing for the court's role in compelling or staying arbitration proceedings when requested.  *See generally Chester Upland School District v. McLaughlin,* 655 A.2d 621, 626 (Pa.Cmwlth.1995).

■ Even before the adoption of the UAA, our Supreme Court held that it is the duty of an arbitrator to afford the parties an opportunity to be heard.  *See Curran v. City of Philadelphia,* 264 Pa. 111, 107 A. 636, 638 (1919).  Today, we describe the opportunity to be heard as among the "minimum standards" necessary of arbitration.

Arbitration, while not surrounded by the technical procedural safeguards incident to litigation, is not a wholly informal process and requires for its validity the observance of certain minimum standards indispensable to the securing of a fair and impartial disposition of the merits of a controversy.  These minimum standards require that both parties are provided with notice, all the arbitrators must sit at the hearing, each side is entitled to be heard and to be present when the other party's evidence is being given and, unless the submission allows a decision by a majority of the arbitrators, all must join in the award.

*Andrew,* 976 A.2d at 501 (citations omitted).

Here, Appellant argues that there exists a general proposition that the mere absence of a hearing necessarily demonstrates that a party is "denied" a hearing, in contravention of the "minimum standards" mentioned above.  It quotes *Andrew*'s summary of the law, wherein we stated: "[W]here a matter is submitted to arbitration, arbitrators are obliged to abide by the minimal procedural requirements necessary for common law arbitration which entails granting the parties a full and fair hearing."  *Andrew* at 501–02.  Our summarization of the law there, however, does not discuss the situation where a party affirmatively seeks to relinquish its right to a hearing, so that a preliminary issue might be decided solely upon the parties' submissions.  Appellant interprets *Andrew*'s silence to mean that *Andrew* closes the door to a party's capacity to relinquish its right to a hearing.  The case law existing prior to *Andrew* provides guidance in this regard.

---

4.  There is no issue concerning the validity of the subsequent arbitration hearing on the merits, which followed the denial of this pre- liminary contention; Appellant does not assert any deficiency with respect to that portion of the arbitration.

In 1919, before the adoption of the UAA, and in the midst of the maligned *Lochner v. New York*[5] era, our Supreme Court held: "Of course, a party may relinquish his right to a hearing; but, where it is admitted no opportunity for a hearing was afforded before the award, that such renunciation did in fact take place must be made to appear by him who asserts it." *Curran*, 107 A. at 638. Subsequently, American jurisprudence evolved, and legislatures are now given greater deference when they endeavor to protect parties from contracting away their rights. That is to say, while *Curran* has not been specifically overruled, its precedence and authority are now dubious. In light of its historical context, we consider it unwise to rely on that case alone.

More recently, following the adoption of the current UAA and little more than thirty years ago, this Court held that a party is not denied the opportunity to be heard at arbitration when the party makes no effort to avail itself of the opportunity to have evidence heard. *See Giant Markets, Inc. v. Sigma Marketing Systems, Inc.,* 313 Pa.Super. 115, 459 A.2d 765 (1983). In *Giant Markets, Inc.,* we explained:

> [A]ppellee, seemingly as an afterthought, argues that it was denied a hearing because it was unable to present testimony regarding the alleged violation of the stipulation. Upon reviewing the record, we have not found a request by appellee to present such evidence, nor have we found that the arbitrator denied any offer of such evidence by appellee. Not having proffered such evidence, appellee cannot now claim that it was denied a fair hearing. *See Runewicz [v. Keystone Ins. Co.,* 476 Pa. 456,

383 A.2d 189, 192 (1978) ]. Furthermore, we fail to see the necessity to present testimony to establish the surrounding circumstances of the alleged breach, when the arbitrator and both counsel witnessed the event. Additionally, we note that appellee availed itself of the opportunity to argue the merits of its objection at length, before the arbitrator ruled. We conclude that no merit exists in appellee's contention.

*Id.* at 771.

Finally, in the only case on which Appellant relies for this issue, *Andrew,* this Court considered whether an arbitration panel was required to hold a hearing on an assertion of the affirmative defense of the statute of limitations. There, the arbitration panel held a pre-hearing telephone conference, which consisted solely of oral argument on the issue of the timeliness of the action, and omitted the presentation of material evidence. The arbitration panel concluded that the affirmative defense precluded the action and no further hearing was held. On appeal, the aggrieved party argued that it was denied an opportunity to be heard because the arbitration panel failed to hold a hearing and consider material evidence. It further argued that the material evidence was necessary to resolve a factual dispute as to the date of the occurrence of the events giving rise to appellant's claims. The trial court concluded that the appellant was not entitled to a hearing. We disagreed and, after review, we held that the failure of the arbitrators to consider material evidence constituted the denial of a full and fair hearing, in contravention of the minimum standards requirement of arbitration: "[A]fter careful review, we conclude that

---

**5.** *Lochner v. New York,* 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905) (considering New York law limiting the number of hours a baker may work in a single day, purportedly in the interests of health and safety; Supreme Court concluding that legislative interferences into the right and liberty to contract violated due process).

the arbitration panel should have conducted a hearing to consider evidence and testimony as to whether Appellant's causes of action are timely." *Andrew*, 976 A.2d at 502-03.

Here, Appellant presumes that *Andrew* is not limited to a failure to consider material evidence and asserts, instead, that *Andrew* broadly establishes that the failure to hold a hearing necessarily demonstrates that a party is "denied" a hearing.[6] We disagree.

The instant case concerns a party who affirmatively sought the resolution of a preliminary matter by submission, rather than at a hearing. Appellant's letter to the arbitrator said as much, stating:

> Because this is a purely legal issue, Toll respectfully requests that you address it on the papers. If, as Toll believes, Claimant is precluded by the Settlement Agreement from asserting his claims in this case, we believe that it makes fiscal sense to avoid the expense of conducting a full-blown arbitration hearing.

Letter, 1/26/11, at 2 (unpaginated); R.R. at 212a.

Appellant makes no effort to coalesce its affirmative request that no hearing be held with its assertion that it was "denied" a hearing under § 7341 of the UAA. Nevertheless, the question Appellant frames for us is whether a party may relinquish their right to a hearing on certain types of issues, or whether minimum standards require a hearing, even where the parties attempt to reject the opportunity.

In our view, *Giant Markets, Inc.*, holds that, while arbitrators must provide parties the *opportunity* to be heard, it is the duty of the parties to avail themselves of that opportunity. *Andrew* did not consider whether a party may decline a hearing on a purely legal matter and, moreover, the case concerned a mixed question of law and fact. Our holding in *Andrew* was based on the failure of the arbitrators to consider material evidence—a contention not relevant here. In the instant case, when faced with the preliminary question of whether the general release precluded the need for a hearing on the substantive issues, the parties agreed that it was a purely legal issue, capable of being disposed of by submission to the arbitrator without a formal hearing. In doing so, the parties declined their opportunity for a hearing on that matter. In light of the relevant case law, and the particular facts of this case, we discern no error in the trial court's conclusion that Appellant was not "denied" its right to a hearing.

■ Appellant's remaining issues concern whether the trial court erred in entering judgment upon the arbitrator's award. Appellant asserts that the court improperly affirmed an "arbitrary and capricious" decision; that the arbitrator was indifferent to the prevailing law; and that the arbitrator's award ran against "strong public policy in favor of settlement agreements." Appellant's Brief at 22–33.

■ Our standard of review is set forth, *supra*, although we emphasize the portion most relevant to these issues:

> The award of an arbitrator ... may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the

---

**6.** Within this issue, Appellant offers the speculative argument that, had a hearing been held on the issue of the general release, it would have presented evidence that the alleged misrepresentation of square footage existed when the settlement agreement was entered into, and did not arise sometime after the agreement. However, Appellant admits that there was no dispute about this fact. Appellant's Brief at 21.

rendition of an unjust, inequitable or unconscionable award. The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either.

*Andrew*, 976 A.2d at 500 (citations omitted).

In this context, irregularity refers to the process employed in reaching the result of the arbitration, not the result itself. A cognizable irregularity may appear in the conduct of either the arbitrators or the parties. Our Supreme Court has stated that the phrase "other irregularity" in the process employed imports "such bad faith, ignorance of the law and indifference to the justice of the result" as would cause a court to vacate an arbitration award. *Allstate Insurance Company v. Fioravanti*, 451 Pa. 108, 299 A.2d 585, 589 (1973).

*F.J. Busse Co., Inc. v. Sheila Zipporah, L.P.*, 879 A.2d 809, 811 (Pa.Super.2005) (some citations omitted). The incapacity of courts to vacate an award based on the mistake of law or fact is well-established. *See Andrew*, 976 A.2d at 500; *Parking Unlimited, Inc. v. Monsour Med. Found.*, 299 Pa.Super. 289, 445 A.2d 758, 760–61 (1982); *Novakovsky v. Hartford Acc. & Indem. Co.*, 219 Pa.Super. 5, 280 A.2d 669, 670 (1971).

Here, Appellant's contention concerns the arbitrator's conclusion that the Settlement Agreement did not preclude the subsequent action regarding the misrepresentation of the square footage of the condominium. The arbitrator, interpreting the Settlement Agreement, determined that the general release provision concerned only the disputes mentioned therein (*i.e.* "the deeded parking issue and the discrimination matter") and did not apply to the square footage dispute. *See* Arbitration Order, dated 2/15/11, at 1 (unpaginated). Appellant argues that the arbi-

trator made no "mistake" of law or fact, but "ignored them completely, leading to a result that was unjust, inequitable or unconscionable." Appellant's Brief at 28. Appellant compares the instant case to *Alaia v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 928 A.2d 273 (Pa.Super.2007), a case where this Court concluded that a procedural irregularity resulted in an improper award. There, the arbitration panel entered an award against a third party, against whom the relevant claim was not made. The trial court modified that award so it applied only to the party against whom the claim was made. We agreed that the arbitrator's award was the product of sufficient irregularity as to permit the trial court to modify the arbitration award.

■ The instant case involves nothing so egregious. It does not implicate the due process concerns arising from a party who is found liable on a claim it was not on notice that it ought to defend itself against. Here, Appellant is merely dissatisfied with the arbitrator's interpretation of the Settlement Agreement; its belief that a court of law might well have reached a different result plainly bolsters its frustration. However, the interpretation of contracts is a question of law. *See Miller v. Poole*, 45 A.3d 1143, 1145 (Pa.Super.2012) ("[C]ontract interpretation is a question of law."). After review of the parties' briefs, it is our view that Appellant's remaining issues raise only disguised contentions that the arbitrator made an error of law. Errors of law and fact, and the unavailability of appellate review of such errors, are the risks of arbitration. Appellant, as a sophisticated party and the drafter of the agreement to arbitrate, is well aware of these risks. Therefore, we agree with the trial court that no relief is due.

Accordingly, for the reasons stated above, we affirm the entry of judgment at

Docket Nos. 838 EDA 2013 and 839 EDA 2013. Additionally, as discussed *supra,* in regard to Dockets Nos. 1297 EDA 2013 and 1298 EDA 2013, we vacate the trial court's March 2013 order.

Order vacated. Judgment affirmed.